

# IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

### WACO DIVISION

2014 HOLDINGS OPERATING, LLC   §
and 2014 GS HOLDINGS, LLC,   §
    Plaintiffs,   §
  §
v.   §   CIVIL ACTION NO. W-15-CV-247
  §
ESSEX INSURANCE COMPANY,   §
    Defendant.   §

## O R D E R

This declaratory judgment action arises out of an insurance contract issued by Defendant.  Defendant moves to dismiss Plaintiffs' claims under Rule 12(b)(6). Having reviewed the pleadings, the parties' briefs, and the applicable legal authority, the Court is persuaded Defendant's motion lacks merit and should be denied.

### I. BACKGROUND

Plaintiffs' Original Complaint asserts the following:

    3.     [2014 GS Holdings Operating, LLC ("Operating")] is a Texas limited liability company with its registered agent in Dallas County, Texas.

    4.     [2014 GS Holdings, LLC ("Holdings")] is a Texas limited liability company with its registered agent in Dallas County, Texas.

    5.     At the times pertinent to this lawsuit, Holdings owned an oil lease on certain real property known as the "Bender" Oil Lease (RRC Lease Id. # 16357) located in Milam County, Texas.

    6.     At the times pertinent to this lawsuit, Operating (Texas RR Id. # 953543), was the operator of the "Bender" Oil Lease.

7.     Essex is a Delaware insurance company. . . .

. . .

9.     Effective for the period August 7, 2014 to August 7, 2015, Essex issued a Commercial General Liability policy to plaintiffs, Policy Number 14EGLMS80154, with an Excess Liability Policy, Policy Number: 14EFXMS80646. Essex issued an endorsement related to the policies entitled "Sudden, Accidental and Abrupt Pollution Coverage – Oil and Gas Industry – Exception For Lease Operators."

10.    Plaintiffs made all payments due under the insurance policies and fulfill [sic] all their obligations under the insurance policies.

11.    The insurance policies covered Plaintiffs' interest in the "Bender" Oil Lease.

12.    By their report dated May 9, 2015, Plaintiffs reported a loss to Essex that was covered by the insurance policy

13.    On January 28-29, 2015, Plaintiffs suffered a loss on the Bender Oil Lease described in the notice sent to Essex: "On Jan 28, early morning hours someone went in packed oil loan line off oil storage tank.  Dumping oil – approx. 180 BBLs crude oil."

14.    On April 3, 2015, Plaintiffs suffered a loss on the Bender Oil Lease described in the notice set [sic] to Essex: "4-3-2015 – someone went over locked gate went to Bender well 18 – opened 1 inch Blender valve and turned well on – pumping approx. 20 BBL – mix of crude/salt water – mixture ran approx. 500' to stock tank, pipe racks/pumping units have been stolen.  About 800 BBL total of oil."

15.    In describing the actions taken after the incidents, plaintiffs advised "Clean up actions were started in both cases – RRC (Texas Railroad Commission) was called – Sheriff's Dept notified, Rockdale Police have been notified of thefts/act of vandalism on wells in town, I have tried to get Texas Rangers involved."

16.    By letter dated June 8, 2015, Essex, through Markel Service Incorporated as the claims service manager for Essex, denied coverage of the incidents because Essex did not receive notice of the

2

incidents in a timely manner, and because the incidents were not covered by the policy.

17.     On July 29, 2015, Dr. Vernon Bender filed suit against plaintiffs in the 20th Judicial District Court, Milam County, Texas, *Dr. Vernon Vender v. 2014 GS Holdings, LLC v. 2014 GS Holdings Operating, LLC*, Cause No. CV37,014.   Bender is the owner of the property subject to the plaintiffs' Bender Oil Lease.

18.     Bender alleges in his lawsuit that:

> 12.     In February of 2015 Defendants [sic] operations resulted in the illegal release of approximately 140 barrels of produced crude oil and saltwater on the subject property.   The crude Oil and Saltwater contaminated the surface of the subject property.

> 13.     On or about April 3rd, 2015 as Defendants [sic] operations again resulted in the illegal release of a large quantity of produced crude oil and saltwater on the subject property.   The crude Oil and Saltwater contaminated the surface of the subject property and the pond Plaintiff used to water his cattle.

19.     Bender seeks to recover damages against plaintiffs which they believe total in excess of $75,000 and include damages for (a) loss of use of all or significant portion of Bender's property, (b) damages for diminution in value of Bender's property, (c) contamination of soil and pond, (d) damages for loss of at least three cows and four calves that ingested oil, (e) loss of artificially inseminated pregnancies from registered Angus cattle, (f) cow and bull infertility and health decline, (g) broken leg of one cow, (h) loss of grazing land, (i) damages to growing crops, (j) loss of hay harvest and other items.

20.     Essex incorrectly and improperly denied coverage to plaintiffs for the losses suffered as a result of the January and April 2015 incidents.   The insurance policies provide coverage.

3

21.   All conditions precedent to plaintiffs' recovery of relief under the insurance policies have been satisfied.

Plaintiffs' Original Complaint, pp. 1-4.

## II. MOTION TO DISMISS

When considering a dismissal under 12(b)(6) for failure to state a claim upon which relief may be granted, the Court accepts as true "all well-pleaded facts" and views them in the light most favorable to the plaintiff. *See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004). However, a plaintiff must allege specific facts, not conclusory allegations. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). Conclusory allegations, as well as unwarranted deductions of fact, are not admitted as true. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim for relief that is *plausible* on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (emphasis added); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted

4

unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.*, quoting *Twombly*.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*). However, the Court need not accept as true legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, at 678. Only those complaints which state a plausible claim for relief survive a motion to dismiss. *Id.* at 679. In making this determination, the reviewing court must "draw on its judicial experience and common sense." *Id.*

"The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (*per curiam*).

## III. DISCUSSION

A.  Consideration of Contract.  Defendant has included as an exhibit to its Motion to Dismiss a copy of the insurance contract at issue.  Plaintiffs argue that Defendant's motion should be construed as a motion for summary judgment under Rule 56.

Although Rule 12(b)(6) requires the Court to limit itself to the pleadings, documents attached to such a motion to dismiss may be considered when they are referenced in the plaintiff's complaint and are central to his claim. *Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2013).  *See also In re: Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000).

As the insurance contract is the very heart of Plaintiffs' complaint, the Court will consider it along with the pleadings rather than converting Defendant's motion into one for summary judgment.

B. Contract Terms.  Defendant argues that Plaintiffs' claims are without basis because timely notice was not provided as required by the terms of the insurance contract.  It is undisputed that interpretation of the insurance contract is governed by the laws of the State of New York.

The specific contract provision at issue is found in the Endorsement entitled Sudden, Accidental and Abrupt Pollution Coverage – Oil and Gas Industry – Exception for Lease Operators.  The schedule of notice provides: (1) Number of

days after commencement for the insured to discover the discharge, dispersal, seepage, mitigation, release or escape of "pollutants": 7; and (2) Number of days for the insured to report the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants" to us in writing: 30.

This provisions additionally provides:

> This insurance applies to "bodily injury" or "property damage" arising out of the actual discharge, dispersal, seepage, migration, release or escape of "pollutants" caused by or resulting from "*your work*" or *your operations* shown in the Schedule above, . . . .

Pollution Coverage Endorsement, § 1 (emphasis added).

Plaintiffs argue the above provision means that the 7-day/30-day notice schedule applies solely to the release of "pollutants" that occurs while the property is being worked. As there were no operations occurring at the time of the release, Plaintiffs argue the general notice provision of within a practicable time should apply.

B. Contract Interpretation. "Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. American Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012) (footnote omitted). The initial interpretation of a contract is a matter of law for the Court to decide. *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). When interpreting a contract, the "'words and phrases . . . should be given their plain meaning,' and the contract 'should be construed so as to give full meaning and effect

7

to all of its provisions.'" *LaSalle Bank Nat'. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (quoting *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 121 (2d Cir. 2003)).  The reviewing court should avoid any interpretation that renders any clause "superfluous or meaningless."  *Id*.

Included in this initial interpretation is whether the contract terms disputed by the parties are ambiguous or unambiguous.  *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998).  "An ambiguity exists where the terms of a contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'"  *Id*. (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)).  "If the court finds that the contract is not ambiguous it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence."  *Id*.  "Ambiguity is absent where the contract's language provides 'a definite and precise meaning, unattended by danger or misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion.'"  *Olin Corp.*, 704 F.3d at 99 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 869 F.2d 1274, 1277 (2d Cir. 1989)).  An ambiguity does not exist merely because the parties urge different interpretations.  *Id*.

In this case, the language of the policy is clear and unambiguous – the 7-day/30-day schedule applies to discharges of pollutants which occur as the result of the insured's work or operations.   The policy does not specifically address a discharge that is the result of vandalism or other criminal activity rather than caused by or as a result of the insured's work or operations.   Therefore, the notice provisions relating generally to notice of claims applies, requiring the insured to notify Defendant "as soon as practicable."   Insurance Contract, Commercial General Liability Coverage Form, Section IV, Commercial General Liability Conditions.

Assuming the allegations of the Plaintiffs' complaint are true, as required in a Motion to Dismiss, the 7-day/30-day notice provision does not apply because the discharge at issue was due to vandalism and/or other criminal activity and Plaintiffs notified Defendant as soon as practicable.  Accordingly, it is

ORDERED that Defendant's Motion to Dismiss is DENIED.

SIGNED this ___17___ day of November, 2015.


_____
WALTER S. SMITH, JR.
United States District Judge

9