**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **2014 GS HOLDINGS OPERATING, LLC** | § | |
| **and 2014 GS HOLDINGS, LLC** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Civil Action No. 6:15-cv-00247-WJS** |
| **vs.** | § | |
| | § | |
| **ESSEX INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

---

**DEFENDANT ESSEX INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Essex Insurance Company ("Essex"), in the above-entitled and numbered cause, and files this Brief in Support of its Motion for Summary Judgment and would respectfully show the Court as follows:

**I.     SUMMARY OF MOTION FOR SUMMARY JUDGMENT**

This is a dispute regarding insurance coverage for losses caused by the release of crude oil and waste water from oil wells that Plaintiffs, 2014 GS Holdings Operating, LLC and 2014 GS Holdings, LLC (collectively "GS Holdings") were operating on property GS Holdings was leasing from Dr. Vernon Bender ("Property").   Dr. Bender filed an environmental contamination lawsuit (the "Claim") against GS Holdings in connection with the damage the oil and waste water caused to the Property and Dr. Bender's livestock which he grazed on the Property.

Essex issued a primary policy ("Primary Policy") and excess policy ("Excess Policy," collectively the "Policies") to GS Holdings which included commercial general liability ("CGL") coverage.  The CGL coverage is subject to a pollution exclusion which precludes coverage, in relevant part, for "'property damage' arising out of the…discharge…or escape of 'pollutants'…at or from any premises, site or location which is or was at any time…rented…to any 'insured.'"  The Primary Policy and Excess Policy also include a Sudden, Accidental and Abrupt Pollution Coverage Endorsement ("Pollution Coverage Endorsement" or "Endorsement").  The Endorsement provides coverage, in relevant part, for property damage caused by the release of pollutants, but is subject to a 30 day reporting requirement.

Essex denied coverage for the Claim under the Endorsement based on GS Holdings' late notice.  It also denied coverage under the Primary Policy's CGL form, based on the applicability of the pollution exclusion to the Claim and under the Excess Policy because it "follows form" to the Primary Policy.

GS Holdings then filed this declaratory relief action challenging Essex's denial of coverage for the Claim.  Essex moved to dismiss the complaint on the late notice grounds.  The Court denied the motion based on its interpretation of the Endorsement's insuring agreement and its conclusion that the release of pollutants was not the result of or caused by GS Holdings' operations or work, and therefore the Endorsement did not apply.  The Court therefore found the Endorsement's 30 day reporting requirement did not apply, and instead applied the CGL's policy's provision which required a loss to be reported "as soon as practicable," which the Court concluded was satisfied.

Because the Court has concluded that the Endorsement does not apply, in order for there to be coverage for the Claim under the Policies, the Claim must fall within the CGL coverage.

However, that coverage is subject to a pollution exclusion. Under New York law, (which is the applicable law based on a choice of law provision in the Policies) the pollution exclusion applies to the Claim. Case law is clear that crude oil and related waste water are pollutants, and the crude oil and waste water were released onto Property causing contamination and injury to Dr. Bender's livestock.

Because the Court has already determined the Pollution Coverage Endorsement does not apply to the Claim and because the Claim is excluded under the only other coverage available under the Policies – the CGL coverage – there is no coverage under the Primary Policy. Nor is there any coverage under the Excess Policy, as that policy "follows form" to the Primary Policy.

Because there is no genuine dispute as to any material fact as to whether Essex has a duty to defend or indemnify GS Holdings for the Claim, Essex is entitled to judgment as a matter of law.

## II.    **EVIDENCE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Essex submits the following evidence in support of its Motion for Summary Judgment:

A.    Affidavit of Maureen Howell, authenticating the following Exhibits to her affidavit:

**Exhibit 1**:    The Incident Report Form submitted by 2014 GS Holdings, LLC;

**Exhibit 2**:    The Essex Primary Policy;

**Exhibit 3**:    The Essex Pollution Coverage Endorsement;

**Exhibit 4**:    The Essex Excess Policy;

**Exhibit 5**:    The June 10, 2015, letter from Essex to GS Holdings denying coverage for the Claim; and,

**Exhibit 6**:    The August 24, 2015, letter from Essex to GS Holdings denying coverage for the State Action filed by Dr. Vernon Binder.

Essex is also relying on the factual admissions in GS Holdings' Complaint and this Court's November 17, 2015 Order Denying Essex' Motion to Dismiss and requests that pursuant to Federal Rule of Evidence 201 the Court take judicial notice of same.

## III.   STATEMENT OF UNDISPUTED FACTS

### A.   Factual Background

#### 1.   The Loss

This is an insurance dispute, wherein GS Holdings seeks a declaration from this Court that there is coverage for the Claim under the Policies.[1]   The underlying Claim arises out of two instances of theft/vandalism involving GS Holdings' operation of oil wells (the "Incidents") on the Property which GS Holdings was leasing from Dr. Bender.[2]   The first Incident occurred on January 28-29, 2015 when "someone went in[to a] packed oil loan line off oil storage tank [d]umping oil – approx[imately] 18 [Barrels of] crude oil."[3]   The second Incident occurred on April 3, 2015, when "someone went over locked gate went to Bender well 18 - opened 1 inch Blender valve and turned well on - pumping approx. 20 [Barrels of a] mix of crude/salt water."[4] GS Holdings alleges it reported the Incidents to Essex on May 11, 2015.[5]

On July 29, 2015, Dr. Bender filed suit against GS Holding in the 10th Judicial District Court, Milam County, Texas, *Dr. Vernon Bender v. 2014 GS Holdings, LLC, 2014 GS Holdings Operating, LLC*, Cause No. CV37,014.[6]   Dr. Bender alleges in his lawsuit that:

> 12.   In February of 2015, Defendants' operations resulted in the illegal release of approximately 140 barrels of produced crude oil and saltwater on the subject property. The crude Oil and Saltwater contaminated the surface of the subject property.

---

[1] GS Holdings' Complaint, ¶¶ 20-24.
[2] *Id.* at ¶¶ 13-14.
[3] *Id.* at ¶ 13.
[4] *Id.* at ¶ 14.
[5] *Id.* at ¶ 12.  See also the true and correct copy of the Incident Report Form attached as Exhibit 1 to the Affidavit of Maureen Howell ("Howell Affidavit").
[6] *Id.* at ¶ 17.

13.    On or about April 3rd, 2015 as Defendants operations again resulted in the illegal release of a large quantity of produced crude oil and saltwater on the subject property. The crude Oil and Saltwater contaminated the surface of the subject property and the pond Plaintiff used to water his cattle.[7]

Dr. Bender seeks to recover damages against GS Holdings which allegedly include damages for (a) loss of use of all or significant portion of the Property, (b) damages for diminution in value of the Property, (c) contamination of soil and pond on the Property, (d) damages for loss of at least three cows and four calves that ingested oil, (e) loss of artificially inseminated pregnancies from registered Angus cattle, (f) cow and bull infertility and health decline, (g) broken leg of one cow, (h) loss of grazing land, (i) damages to growing crops, (j) loss of hay harvest and other items.[8]

## 2.    The Essex Policies

Effective for the period August 7, 2014 to August 7, 2015, Essex issued the Primary Policy to GS Holdings, Policy Number 14EGLMS80154.[9]   The Primary Policy includes commercial general liability ("CGL") coverage written on form CG 00 01 12 07.[10]

The CGL insuring agreement provides coverage in part, for "property damage" and "bodily injury" caused by an "occurrence."[11]   As used in the insuring agreement, the Policy includes the following relevant terms:

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

---

[7] *Id.* at ¶ 18.
[8] *Id.* at ¶ 19.
[9] A true and correct copy of the Primary Policy is attached as Exhibit 2 to the Howell Affidavit.
[10] *Id.*
[11] *Id.*

17.     "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it….[12]

The Primary Policy also includes a pollution exclusion which precludes coverage for:

**f.     Pollution**

(1)     "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.[13]

The Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste..."[14]

The Primary Policy also includes a Sudden, Accidental and Abrupt Pollution Coverage Endorsement written on form MEGL 1825 09 13 (e.g., the previously defined Endorsement).[15] The Endorsement's insuring agreement states:

This insurance applies to "bodily injury" or "property damage" arising out of the actual discharge, dispersal, seepage, migration, release or escape of "pollutants" caused by or resulting from "your work" or your operations shown in the Schedule above, provided that:

    a.    "Your work" or your operations are being conducted away from premises owned by or rented to the Named Insured and the "bodily injury" or "property damage" occurs away from such premises unless the premises are operated or occupied by you solely for the purpose of performing "your work" or your operations;…[16]

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] A true and correct copy of the Pollution Coverage Endorsement is attached as Exhibit 3 to the Howell Affidavit.
[16] *Id.*

Pursuant to the Endorsement, "[s]olely as respects coverage provided by the [E]ndorsement, exclusion **f.**, Pollution in Paragraph 2. Exclusions, is deleted."[17]   The Endorsement includes a notice provision which requires that the insured "report the commencement of the discharge, dispersal, seepage, migration, release or escape of 'pollutants' to [Essex] in writing" within 30 days.[18]

> The Primary Policy includes a "Choice of Law" provision which states:

> Unless otherwise expressly endorsed in the policy(ies), the law of New York, without giving effect to its conflict of law principles, governs all matters arising out of or relating to this policy and all of the transactions it contemplates, including, without limitation, its formation, validity, interpretation, construction, performance and enforcement.[19]

> Essex also issued to GS Holdings an Excess Liability Policy, Policy Number: 14EFXMS80646.  Pursuant to the Excess Policy's insuring agreement:

> the coverage provided by this insurance shall follow the insuring agreements, warranties, limitations, definitions, conditions and exclusions of the 'underlying insurance' including all endorsements made a part of the 'underlying insurance', as shown in the 'schedule' attached.  In no event shall this policy grant broader coverage than would be provided by any 'underlying insurance. [20]

> The Excess Policy further states on page 15 under Section II-EXCLUSIONS, "This insurance does not apply to: B. Liability that is excluded or otherwise not covered by any one or more of the 'underlying insurance' policies."[21]  "Underlying insurance policy" is defined as the Primary Policy.[22]  The Excess Policy includes the same Choice of Law provision as the Primary Policy, and requires that New York law be applied to all coverage disputes under the Excess Policy.[23]

---

[17] *Id.*
[18] *Id.*
[19] *See* Exhibit 2 to the Howell Affidavit, Primary Policy, General Terms and Conditions Section, p. 1, Section I.A.4.
[20] A true and correct copy of the Excess Policy is attached as Exhibit 4 to the Howell Affidavit .
[21] *Id.*
[22] *Id.*
[23] *Id.*, Section VI – Conditions, D. Choice of Law.

### 3.     Essex' Denial Of Coverage For The Claim

By letter dated June 10, 2015, Essex denied coverage for the Claim under the Endorsement based on GS Holdings' failure to comply with the Endorsement's requirement that all releases of pollutants be reported within 30 days of the release.[24]  Essex denied coverage for the Claim under the CGL coverage based on the applicability of that form's pollution exclusion.[25]  It also denied coverage under the Excess Policy on the grounds it "follows form" to the Primary Policy and therefore also included the pollution exclusion.[26]  And by letter of August 24, 2015, Essex denied coverage of the State Action described above wherein Dr. Bender filed suit against GS Holding in the 10th Judicial District Court, Milam County, Texas, styled as *Dr. Vernon Bender v. 2014 GS Holdings, LLC, 2014 GS Holdings Operating, LLC*, Cause No. CV37,014.[27]

### B.     Procedural History

### 1.     GS Holdings Files This Declaratory Relief Action

GS Holdings filed this case on August 27, 2015 as a "civil action for damages and declaratory judgment."[28] GS Holdings alleged Essex breached its contract of insurance with GS Holdings by denying coverage and seeks a declaratory judgment as to coverage for the Claim under the Essex Policies.[29]

### 2.     Essex Files A Motion To Dismiss

On October 10, 2015, Essex filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the grounds that there was no coverage under the Policies because

---

[24] A true and correct copy of the June 10, 2015, Denial of Coverage Letter is attached as Exhibit 5 to the Howell Affidavit.
[25] *Id.*
[26] *Id.*
[27] A true and correct copy of the August 24, 2015, Coverage Disclaimer Letter is attached as Exhibit 6 to the Howell Affidavit.
[28] Complaint at ¶ 1.
[29] *Id.* at ¶¶ 23-24.

of GS Holdings' failure to give timely notice of the Claim as required by the Pollution Coverage Endorsement.[30]

### 3. The Court's Ruling Denying Essex' Motion To Dismiss

On November 17, 2015, the Court denied Essex' Motion to Dismiss based on the Court's interpretation of the Endorsement's insuring agreement and its conclusion that the 30 day reporting requirement did not apply.[31]   In its ruling, the Court first cites to the Endorsement's "schedule of notice" which provides:

(1)     Number of days after commencement for the insured to discover the discharge, dispersal, seepage, migration, release or escape of "pollutants": 7;

(2)     Number of days for the insured to report the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants": 30.[32]

The Court then cites to the insuring agreement which states:

This insurance applies to…"property damage" arising out of the actual discharge, dispersal, seepage, migration, release or escape of "pollutants" caused by or resulting from "*your work*" or *your operations* shown in the Schedule. (Emphasis in Court Opinion).

Interpreting these two provisions, the Court held:

[T]he language of the policy is clear and unambiguous – the 7-day/30-day schedule applies to discharges of pollutants which occur as the result of the insured's work or operations.   The policy does not specifically address a discharge that is the result of vandalism of other criminal activity rather than caused by or as a result of the insured's work or operations.   Therefore, the notice provisions relating generally to notice of claims applies, requiring the insured to notify Defendant "as soon as practicable." Insurance Contract, Commercial Liability Coverage Form, Section IV, Commercial General Liability Conditions.[33]

Thus the Court, focusing on the word "your", found that because the discharge of pollutants did not occur as the result of the insured's work or the insured's operations, but

---

[30] Defendant's Motion to Dismiss.
[31] Court Order Denying Essex's Motion to Dismiss, pp. 6-7.
[32] *Id.* at p. 7.
[33] *Id.* at p. 9.

instead as the result of vandalism, the 30-day notice provisions in the endorsement did not apply and instead the "soon as practicable" notice provision in the Policy's CGL form applied.[34]

## IV.    STATEMENT OF ISSUES

This Motion for Summary Judgment presents the following issues:

ISSUE ONE: Whether the Court's Order Denying Essex' Motion to Dismiss is the law of the case with respect to those issues it resolved in that Order?

ISSUE TWO:   Is coverage barred under the Primary Policy's CGL coverage by the pollution exclusion?

ISSUE THREE:  If there is no coverage under the Primary Policy does that mean there is no coverage under the "follow form" Excess Policy?

Because the answer to each of the questions is "Yes," Essex is entitled to judgment in its favor as a matter of law.

## V.    LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *See Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," the non-moving party must come forward with

---

[34] *Id.*

significant probative evidence showing a triable issue of fact. Fed. R. Civ. P. 56(e); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428 (5th Cir. 1996). "Where, as here, an insurance policy's unambiguous terms demonstrate that the policy does not cover the claimed loss, summary judgment is appropriate." *Green Harbour Homeowners' Ass'n, Inc. v. Chicago Title Ins. Co*., 74 A.D.3d 1655, 1658 (N.Y. App. 2010).

## VI.   ARGUMENT

### A.   Under New York Law, An Insurer Has No Duty to Defend Or Indemnify Its Insured, Where, As, Here, The Allegations Of A Claim Fall Entirely Within A Policy Exclusion

The duty to defend under New York law "is triggered whenever the allegations of a complaint, liberally construed, suggest a reasonable possibility of coverage, or the insurer has actual knowledge of facts establishing a reasonable possibility of coverage." *Bruckner Realty, LLC v County Oil Co., Inc*., 40 A.D.3d 898, 900 (N.Y. App. 2007). "[A]n insurance carrier can be relieved of its duty to defend if it establishes, as a matter of law, that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision" *Matter of Transtate Ins*. Co., 303 A.D.2d 516 (N.Y. App. 2003). "An insurer may also disclaim coverage on the basis of a policy exclusion by demonstrating that the allegations of the complaint cast that pleading solely and entirely within the exclusion." *Bruckner Realty, LLC v County Oil Co., Inc*., 40 A.D.3d at 900.

**B.**   **The Court's Ruling That There Is No Coverage Under The Pollution Coverage Endorsement Is The Law Of The Case**

The law of the case doctrine was developed to "maintain consistency and avoid [needless] reconsideration of matters once decided during the course of a single continuing lawsuit." 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 4478, at 788 (1981).  "The doctrine of the 'law of the case' is a rule of practice, an articulation of a sound policy that, when an issue is once judicially determined, that should be the end of the matter as far as Judges and courts of co-ordinate jurisdiction are concerned." *Credit Francais International, S. A. v. Sociedad Financiera de Comercio, C. A.*, 128 Misc.2d 564, 575 (N.Y. Sup. Ct. 1985) (internal citations omitted).   The law of the case "forecloses reexamination of an issue that has been decided absent a showing of newly discovered evidence or a change in the law." *Kaygreen Realty Co., LLC v. IG Second Generation Partners, L.P.*, 116 A.D.3d 667, 669 (N.Y. App. 2014).  The doctrine extends to those issues "decided by necessary implication as well as those decided explicitly." *Dickinson v. Auto Ctr. Mfg. Co.*, 733 F.2d 1092, 1098 (5th Cir. 1983).

In the Court's denial of Essex' Motion to Dismiss, the Court held that the 30 day notice provision did not apply.   Focusing on the Endorsement's insuring agreement, the Court explained:

> This insurance applies to…"property damage" arising out of the actual discharge, dispersal, seepage, migration, release or escape of "pollutants" caused by or resulting from "*your work*" or *your operations* shown in the Schedule (emphasis in Court Opinion).

The Court, focusing on the word "your", found that because the discharge of pollutants did not occur as the result of the insured's work or the insured's operations, but instead as the result of vandalism, the 30-day notice provisions in the endorsement did not apply and instead the "soon as practicable" notice provision in the Policy's CGL form applied.   By concluding that

the "discharge of pollutants did not occur as the result of the insured's work or the insured's operations" the Court also decided that the Claim did not fall within the Endorsement's insuring agreement.  In other words, the Court found that there is no coverage under the Pollution Coverage Endorsement.  This ruling is the law of the case.

### C.   Because the Pollution Coverage Endorsement Does Not Apply To The Claim, In Order For The Claim To Be Covered It Must Be Covered Under The Primary Policy's CGL Form

The Primary and Excess Policies include only two forms of liability coverage – the CGL coverage and the Pollution Coverage under the Endorsement.  Because the Court ruled that the Claim does not fall within the Endorsement's insuring agreement, in order for there to be coverage for the Claim under the Primary Policy (and hence under the follow form Excess Policy), the Claim must fall within the only other type of coverage under the Policies – CGL Coverage under form CG 00 01 12 07.

### D.   The Primary Policy's Pollution Exclusion Precludes CGL Coverage For The Claim

The Primary Policy's CGL form is subject to a pollution exclusion which precludes coverage in relevant part for:

(1)     …"property damage" arising out of the actual, alleged or threatened discharge, dispersal, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time…occupied by, or rented or loaned to any insured….

The Primary Policy defines "pollutants" as: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste…."

Here, the pollution exclusion was included in the CGL coverage to ensure no overlap between the Pollution Coverage Endorsement, which provided coverage for petroleum

contamination on the site, and any pollution conditions that were not covered under that Endorsement.

1.   **New York Courts Interpret The Phrase "Arising Out Of" Broadly As Used In Insurance Policy Exclusions**

New York courts broadly interpret the phrase "arising out of" in the context of insurance coverage and exclusions "to mean originating from, incident to, or having connection with." *Natural Organics, Inc. v OneBeacon Am. Ins. Co*., 102 A.D.3d 756, 759 (N.Y. App. 2013)(citing *Maroney v New York Cent. Mut. Fire Ins. Co*., 5 N.Y.3d 467, 472 (N.Y. App. 2005)).  For a policy exclusion to apply, all that is required is that "there be some causal relationship between the injury and the risk for which coverage is…excluded." *Natural Organics, Inc. v OneBeacon Am. Ins. Co*., *supra,* 102 A.D.3d at 759 (internal citations omitted).

Here, there is a causal connection between all of the damages at issue in the Claim, including the contamination to the Property, the soil and the ponds, the loss of use of the Property, the claimed decrease in value of the Property and the alleged injury to Dr. Bender's livestock – none of the claimed damage would have occurred were it not for the release of pollutants onto the Property from the oil wells.

2.   **The Crude Oil And Salt/Waste Water Are "Pollutants"**

The Claims arise out the contamination of land and livestock by crude oil and waste water.  New York law makes clear the pollution exclusion applies to such losses. For example, in *Bruckner Realty, LLC v. County Oil Co., Inc*., 40 A.D.3d 898, the insured, an oil company, sold oil to a relator.  The relator allegedly incurred damages after heating oil from a burst pipe in its heating system flowed into both the sewer overflow system and a creek.  The court held that the insurer had no duty to defend or indemnify the oil company because the allegations of the complaint fell "solely and entirely within the pollution exclusion." *Id.* at 900.  *See also Steuben*

14

*Contracting, Inc. v. Employers Ins. of Wausau,* 975 F. Supp. 479 (W.D. N.Y. 1997) (applying New York law and holding that claims arising from the alleged discharge of petroleum from the insured's pipeline spur were not covered as they are subject to absolute pollution exclusion); *State of New York v One Beacon Ins. Co*., 2011 N.Y. Misc. LEXIS 613, *3-4 (N.Y. Sup. Ct. 2011) (because it is uncontested that petroleum is a "pollutant" under the policy, this exclusion's language clearly and unmistakably excludes coverage for property damage caused by petroleum discharged.)

Case law is equally clear that salt/waste water, particularly here, where it is released with the petroleum, qualifies as a pollutant. *Harken Exploration Co*., 261 F.3d at 475 (characterizing saline substances as pollutants); *United Nat'l Ins. Co. v. Hydro Tank, Inc*., 525 F.3d 400, 401-402 (5th Cir. 2008) (finding that the oil and other substances from the wells and oil and gas operations are undoubtedly irritants based on the property damage they are alleged to have caused to the property); *Travelers Indem. Co. v Orange & Rockland Util., Inc*., 2009 N.Y. Misc. LEXIS 4380, *7 (N.Y. Sup. Ct. Aug. 18, 2009), (reversed in part on other grounds in *Travelers Indem. Co. v Orange & Rockland Utils., Inc*., 73 A.D.3d 576 (N.Y. App. 2010)) (pollution exclusion precluded coverage for contamination caused by waste water, tars and benzene as by-products of gas manufacturing operations); *Century Sur. Co. v. Dewey Bellows Operating Co*., 2009 U.S. Dist. LEXIS 78295, *20-21 (S.D. Tex. 2009); ("[C]ourts have consistently held that salt water is a pollutant" in the context of oil well operations.); *Am. Family Equity Ins. Co. v. Castlemane Farms, Inc*., 220 F. Supp. 2d 809, 814 (S.D. Tex. 2002) ("There can be no dispute that the contents of a 'salt-water disposal pipeline' is within the category of 'liquid waste.'"); *Nautilus Ins. Co. v. Country Oaks Apartments Ltd*., 566 F.3d 452, 456 (5th Cir. 2009) (finding salt water  is a "pollutant" under the pollution exclusion); *Nat'l Fire Ins. Co. v. Martinelli*, 2008

U.S. Dist. LEXIS 52911, *31-32 (E.D. Cal. 2008) (contamination caused by saltwater/brine from a commercial process pond excluded from coverage by the pollution exclusion).

Because both crude oil and related salt water/waste water qualify as pollutants, the CGL coverage's pollution exclusion precludes coverage for the Claim.

### 3. The Claimed Damages Arise Out Of The Release Of Pollutants From Property Rented To The Insured

The pollution exclusion applies to "property damage" that arises out of a discharge, dispersal, release or escape of "pollutants" from property rented to an insured.  Here, Dr. Bender alleges that a "release" from an oil well leased to GS Holdings "of approximately 140 barrels of produced crude oil and saltwater on the subject property [and] the crude Oil and Saltwater contaminated the surface of the subject property."  He alleges that the second "illegal release" from another well leased by GS Holdings of "a large quantity of produced crude oil and saltwater on the subject property [and] the crude Oil and Saltwater contaminated the surface of the subject property and the pond Plaintiff used to water his cattle."

Because the underlying Claim is based on two "releases" of pollutants from oil wells that Dr. Bender rented to GS Holding, and those releases contaminated Dr. Bender's property and injured his livestock, the pollution exclusion applies and there is no CGL coverage for the Claim.

### 4. That The Alleged Damage Was Caused By Vandalism As Well As Pollution, Does Not Impact The Pollution Exclusion's Applicability To The Claim

Essex anticipates that GS Holdings will seek to avoid the applicability of the pollution exclusion by arguing that the alleged damage was caused by vandalism.  New York courts, however, have rejected similar arguments.  "[W]hen an insured makes this argument concerning partially covered and partially uncovered underlying claims, the question is whether the plaintiffs in the underlying action would be able to prove the allegedly covered claim without

16

proving the uncovered claim." *See Natural Organics, Inc. v. OneBeacon Am. Ins. Co., supra,* 102 A.D.3d at 759.

For example, in *Ruggerio v Aetna Life & Cas. Co.*, 107 A.D.2d 744 (N.Y. App. 1985) plaintiffs obtained a judgment against a cab company based on causes of action for negligent operation of an automobile and for negligence in the hiring of an incompetent and unlicensed employee driver and entrustment of a taxicab to him.  In concluding that a policy exclusion for liability "arising out of the…use of an automobile," *id.* at 745, applied to preclude coverage for both causes of action the court explained:

> Although the vicarious liability of defendant's insured and its affirmative breach of a duty owed to plaintiffs are separate causes of action, it is clear that this policy was not intended to cover injuries "arising out of" automobile accidents. [The] insured's negligent actions in hiring an incompetent and unqualified driver and dispatching him when he was intoxicated "do no more than provide reasons or subfactors" explaining why the accident arose out of the operation of an automobile and are therefore also excluded from coverage under the policy [].  While [the insured's] acts may have been a proximate cause of plaintiff's…injuries, that is only determinative of the underlying liability of the insured.  An insurance policy, however, is in essence a contract and must be construed in accordance with the intent of the parties as expressed in the clear language of the policy [].  Here, the policy clearly stated "[this] insurance does not apply…to bodily injury…arising out of the ownership…operation [or] use…of…any automobile…owned or operated by…any insured."

*Id.* at 744-745 (internal citations omitted).  *See also U.S. Underwriters Ins. Co. v. Val-Blue Corp.*, 85 N.Y.2d 821, 823 (N.Y. Sup. 1995) (holding that "[t]he plethora of claims surrounding [the underlying plaintiff's] injury . . . are all 'based on' [the excluded assault and battery] without which [the underlying plaintiff] would have no cause of action").  Here, while the vandalism contributed to cause the alleged damages, it is no more than a subfactor explaining what caused the release of pollutants.  Because Dr. Bender's Claim arises out of the excluded pollution, the pollution exclusion applies to all of the Claim's alleged damages.

**E.**      **Because the Claim Is Not Covered Under The Primary Policy, It Is Not Covered Under The "Follow Form" Excess Policy**

Nor is there any coverage for the Claim under the Excess Policy.  The Excess Policy is written on Environmental Follow Form Excess Liability Coverage Form (MEIX 0001 12 12). The Schedule of Underlying Insurance for the Excess Policy identifies only the Primary Policy. Coverage under the Excess Policy "follows form" to the underlying Primary Policy and as such, is subject to the same terms, conditions and exclusions as the Primary Policy.  *See, generally, Home Ins. Co. v. American Home Products Corp.*, 902 F.2d 1111, 1113 (2nd Cir. 1990) (noting that a "'following form' insurance agreement is one that subjects the excess insurer to the 'terms, conditions and exclusions' of the underlying policy").

Because there is no coverage for the Claim under the Primary Policy's CGL coverage or the Pollution Coverage Endorsement, there is no coverage for the Claim under the Excess Policy. As such, Essex has no duty to defend or indemnify GS Holdings in connection with the Claim.

**VII.**      **CONCLUSION**

The Essex Policies afford two types of liability coverage – Pollution Coverage under the Endorsement and CGL coverage which is subject to a pollution exclusion.  The Court's finding that the Pollution Coverage Endorsement did not apply to the Claim and the plain language of the CGL coverage's pollution exclusion and case law finding that the exclusion unambiguously applies to damage caused by the release of oil and salt water/waste water, compels the conclusion there is no coverage under the CGL coverage for the Claim.  As such, Essex has no duty to defend or indemnify GS Holdings for the Claim under the Policies, and is entitled to judgment in its favor as a matter of law.

Respectfully submitted,

By:  __/s/ Mark W. Thayer__
   Mark W. Thayer
   Texas State Bar No. 19826050
   mthayer@gordonrees.com
   1900 West Loop South, Suite 1000
   Houston, Texas 77027
   (713) 961-3366 – Telephone
   (713) 961-3938 - Facsimile
ATTORNEYS FOR DEFENDANT
ESSEX INSURANCE COMPANY

## **CERTIFICATE OF SERVICE**

   I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 27th day of April, 2016 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.

     __/s/ Mark W. Thayer__
     MARK W. THAYER