IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **2014 GS HOLDINGS OPERATING, LLC** § <br> **and 2014 GS HOLDINGS, LLC** § <br> § <br> Plaintiffs, § <br> § Civil Action No. 6:15-cv-00247-WJS <br> vs. § <br> § <br> **ESSEX INSURANCE COMPANY,** § <br> § <br> Defendant. § | |

**DEFENDANT ESSEX INSURANCE COMPANY'S MOTION FOR
RECONSIDERATION OF RULING ON THE MOTION FOR SUMMARY JUDGMENT**

Defendant Essex Insurance Company ("Essex") herein submits this Motion for Reconsideration under Fed. R. Civ. P. 54(b), as well as established case law.

Essex respectfully moves for reconsideration of this Court's July 7, 2016, ruling denying Essex's Motion for Summary Judgment (the "Ruling") as the Ruling is based on two errors of law. First, the Ruling relied on a New York Insurance statute that does not apply to the Essex insurance policies at issue. Second, the Court's Ruling denying the Motion for Summary Judgment ("MSJ") is in direct conflict with the Court's prior ruling denying Essex's Motion to Dismiss. As such, reconsideration of the Ruling is warranted.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Essex respectfully moves for reconsideration of this Court's July 7, 2016, Ruling in which the Court denied Essex's MSJ as the Ruling is based on two errors of law. First, the Ruling relied on a New York Insurance statute that does not apply to the Essex insurance policies at issue. Second, the Court's Ruling denying the MSJ is in direct conflict with the Court's prior

ruling denying Essex' Motion to Dismiss.

In the MSJ, Essex argued there was no coverage under a primary policy ("Primary Policy") and excess policy ("Excess Policy") (collectively "Policies") issued to insureds 2014 GS Holdings, LLC and 2014 GS Holdings Operations, LLC (collectively "GS Holdings") for damage caused by the release of pollutants from oil wells that GS Holdings was operating on property leased from Dr. Vernon Bender and for the lawsuit filed by Dr. Bender against GS Holdings seeking recovery of those damages (the "Claim").

Essex's MSJ relied on the Court's ruling denying Essex's Motion to Dismiss, in which the Court determined that the pollution coverage endorsement in the Policies was not applicable to the Claim because coverage under the pollution coverage endorsement was for pollution discharges resulting from GS Holdings' "'work' or operations," and the underlying pollution discharges were the result of vandalism. In light of the Court's ruling that the pollution coverage endorsement did not provide pollution coverage for the Claim, the only liability coverage potentially available was under the Policies' commercial general liability ("CGL") coverage. However, the CGL coverage is subject to a pollution exclusion which bars coverage for the Claim, therefore Essex' MSJ argued there was no coverage under the Policies as a matter of law.

This Court denied Essex' MSJ without considering the arguments raised by the parties in their moving papers. Instead, the Court reversed its position on the inapplicability of the pollution coverage endorsement, finding that the endorsement *did* apply to the Claim because the pollution discharges *did result from* GS Holding's work. The Court then found that the endorsement's notice provisions were unenforceable based upon New York's Insurance statute which required a showing of prejudice before an insurer could rely on a late notice defense. In direct conflict with its previous order denying the Motion to Dismiss, the Court held that the

Claim clearly falls within the pollution coverage endorsement, and therefore denied Essex's MSJ in its Ruling.

Because the Court's Ruling relies on a New York Insurance statute which does not apply to the Policies, and the Court's Ruling is in direct conflict with its earlier order denying Essex's Motion to Dismiss, Essex respectfully requests that the Court reconsider its Ruling on Essex's MSJ pursuant to Fed. R. Civ. P. 54(b), as well as established case law.

## II.     EVIDENCE IN SUPPORT OF MOTION FOR RECONSIDERATION

Essex submits the following evidence in support of its Motion for Reconsideration:

A.     Affidavit of Maureen Howell, authenticating the following affidavit Exhibits:

**Exhibit 1**:     The Incident Report Form submitted by 2014 GS Holdings, LLC;

**Exhibit 2**:     The Essex Primary Policy;

**Exhibit 3**:     The Essex Pollution Coverage Endorsement;

**Exhibit 4**:     The Essex Excess Policy;

**Exhibit 5**:     Essex's Denial of Claim of June 10, 2015; and,

**Exhibit 6**:     Essex's Denial of Coverage of August 24, 2015.[1]

Essex is also relying on the factual admissions in GS Holdings' Complaint, the Court's November 17, 2015 Order Denying Essex' Motion to Dismiss, and the Court's July 7, 2016 Ruling Denying Essex' MSJ, and requests that the Court take judicial notice of same pursuant to Federal Rule of Evidence 201.

## III.    BACKGROUND

### A.    Underlying Facts

This is a dispute regarding insurance coverage for losses caused by the release of crude oil and waste water from oil wells that GS Holdings were operating on property GS Holdings

---

[1] Howell's Affidavit, with Exhibits 1-6, were filed with Essex's MSJ as Doc 22-1 through 22-7, respectively.

was leasing from Dr. Vernon Bender ("Property").  Dr. Bender asserted the Claim against GS Holdings in connection with damages the oil and waste water caused to the Property and Dr. Bender's livestock which he grazed on the Property.

Essex issued the Primary Policy and Excess Policy to GS Holdings which included CGL coverage.  The CGL coverage is subject to a pollution exclusion which precludes coverage, in relevant part, for "'property damage' arising out of the…discharge…or escape of 'pollutants'…at or from any premises, site or location which is or was at any time…rented…to any 'insured.'" (Doc 22-3, p. 44).  The Primary Policy and Excess Policy also include a Sudden, Accidental and Abrupt Pollution Coverage Endorsement ("Endorsement") which provides coverage, in relevant part, for property damage caused by the release of pollutants, but is subject to a 30 day reporting requirement. (Doc 22-4, p. 2).

Essex denied coverage for the Claim under the Endorsement based on GS Holdings' late notice. (Doc 22-7, p. 7).  It also denied coverage under the Primary Policy's CGL form, based on the applicability of the pollution exclusion to the Claim (*Id.*)*,* and under the Excess Policy because it "follows form" to the Primary Policy. (Doc 22-6, p. 2).

### B. Procedural History

#### 1. This Action

GS Holdings filed this action on August 27, 2015 as a "civil action for damages and declaratory judgment."  GS Holdings alleged Essex breached its contract of insurance with GS Holdings by denying coverage and seeks a declaratory judgment as to coverage for the Claim under the Essex Policies.

#### 2. The Court's Ruling Denying Essex's Motion To Dismiss

On October 10, 2015, Essex filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) based on the grounds there was no coverage under the Policies because of GS Holdings'

failure to give timely notice of the Claim as required by the Endorsement.  Specifically, Essex argued that the notice requirement was a condition precedent to Essex's duty to defend, and that "[t]he insured's failure to satisfy the notice requirement constitutes 'a failure to comply with a condition precedent which as a matter of law, vitiates the contract,'" under New York law. (Doc 7, p. 4).

On November 17, 2015, the Court denied the Motion to Dismiss, finding that because the Endorsement states that it applies to discharges of pollutants that resulted from the insured's work or operations, and here the discharge resulted from vandalism or other criminal activity, the Endorsement did not apply.  In the Court's order denying the Motion to Dismiss, the Court explained that the GS Holdings opposed the Motion to Dismiss on the grounds that the Endorsement's notice provision did not apply because "there were no operations occurring at the time of the release."  The Court agreed.  Focusing on the language of the Endorsement, the Court cited to the following insuring agreement language:

> This insurance applies to…"property damage" arising out of the actual discharge, dispersal, seepage, migration, release or escape of "pollutants" caused by or resulting from "*your work*" or *your operations* shown in the Schedule. (Court Order Denying Essex' Motion to Dismiss, p. 9, emphasis in original.)

Focusing on the Endorsement's requirement that the release must arise out of the insured's work or operations, the Court held:

> [T]he language of the policy is clear and unambiguous – the 7-day/30-day schedule applies to discharges of pollutants which occur as the result of the insured's work or operations.  The policy does not specifically address a discharge that is the result of vandalism of other criminal activity rather than caused by or as a result of the insured's work or operations.  Therefore, the notice provisions relating generally to notice of claims applies, requiring the insured to notify Defendant "as soon as practicable…"  (Court Order Denying Essex' Motion to Dismiss, p. 9.)

The Court therefore found the Endorsement's 30 day reporting requirement did not apply, and instead applied the CGL's policy's provision which required a loss to be reported "as soon as

5

practicable," which the Court concluded was satisfied.

### 3. The Court's Ruling Denying Essex's Motion For Summary Judgment

Based on the Court's reasoning for its denial of the Motion to Dismiss, Essex moved for summary judgment arguing that since the Endorsement did not provide pollution coverage for GS Holdings, the only liability coverage potentially available to it was under the commercial general liability coverage in the Primary Policy (and follow form Excess Policy) and this coverage was subject to a pollution exclusion which applied to the Claim.

GS Holdings opposed the MSJ arguing that vandalism was covered and undermined the application of the pollution exclusion. In the reply, Essex argued that so long as the property damage results from pollution, it was irrelevant what caused the pollution discharge, dispersal, release, escape or migration that damaged Dr. Bender's Property.

The Court denied Essex's MSJ. The Ruling is silent on the arguments made by the parties in their briefs. Instead, the Court held:

> These allegations clearly fall within the language of the Endorsement in the policy which provides "This insurance applies to 'bodily injury' or 'property damage' arising out of the actual discharge, dispersal, seepage, migration, release or escape of 'pollutants' caused by or resulting from 'your work' or 'your operations…" Accordingly, Defendant's motion will be denied as it relates to the duty to defend. (MSJ Ruling, p. 8.)

Essex now moves the Court for reconsideration of its Ruling denying Essex's MSJ.

### IV. ARGUMENT

#### A. Legal Standard

The Federal Rules of Civil Procedure do not recognize a general motion for reconsideration, though courts do rule on such motions under Rules 54(b), 59 and 60. *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004); *see also St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997); *U.S. Bank Nat'l Ass'n v. Verizon*

*Communications Inc.*, No. 3:10-CV-1842-G, 2012 U.S. Dist. LEXIS 103900, *4-*5 (N.D. Tex. July 25, 2012) (Fish, J.).[2] "Motions for reconsideration have a narrow purpose and are only appropriate to allow a party to correct manifest errors of law or fact or to present newly discovered evidence." *Arrieta v. Yellow Transp., Inc.*, No. 3:05-CV-2271-D, 2009 U.S. Dist. LEXIS 3336, *3-*4 (N.D. Tex. Jan. 20, 2009) (Fitzwater, C.J.) (citation and internal quotation marks omitted), *aff'd* 641 F.3d 118 (5th Cir. 2011*), pet. for cert. filed*, 80 U.S.L.W. 3650 (May 9, 2012) (No. 11-1361); *Texas Instruments, Inc. v. Hyundai Elec. Indus., Co.*, 50 F. Supp. 2d 619, 621 (E.D. Tex. 1999) (citations omitted).

Reconsideration motions are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Herrington v. U. of Tex. M.D. Anderson Cancer Ctr.*, No. H-09-0601, 2011 U.S. Dist. LEXIS 5172, *2 (S.D. Tex. Jan. 19, 2011) (Rosenthal, J.). "Such motions are not the proper vehicle for rehashing old arguments or advancing theories of the case that could have been presented earlier." *Id*. (citation omitted). A ruling should only be reconsidered where the moving party presents substantial reasons for requesting reconsideration. *Baustian v. Louisiana*, 929 F. Supp. 980, 981 (E.D. La. 1996).

Here, Essex presents substantial reasons for requesting reconsideration. Specifically, the Court's Ruling erroneously relied on a New York Insurance statute which as a matter of law does not apply to the Essex Policies at issue and further, the Court's Ruling denying the MSJ is in direct conflict with the Court's prior ruling denying Essex's Motion to Dismiss.

---

[2] Copies of all unreported decisions cited herein are appended hereto in alphabetical order as **Exhibit A**.

**B.      Reconsideration Of The Court's Ruling Is Warranted As The Ruling Is Based On Two Errors of Law**

    **1.     New York Insurance Law Section 3420's Late Notice/Prejudice Rule Applies Only To Insurance Policies Issued In New York; Because Here The Policies Were Issued In Illinois, The New York Statute Does Not Apply**

In its Ruling denying Essex's MSJ, the Court relied on New York Insurance Law section 3420(a)(5) which requires that insurers show prejudice before they can rely on a late notice defense.  Thus, the Court refused to apply the Pollution Coverage Endorsement's notice provisions which require that the GS Holding report to Essex within 30 days any discharge of pollutants.  Instead, the Court held that "upon further analysis…New York law prohibits insurers from denying claims on the ground of late notice in the absence of prejudice.  See N.Y. Insur. Law § 3420(a)(5)." (MSJ Ruling, page 4).

However, the New York notice provisions relied upon by the Court are not applicable to the Essex Policies as they were not delivered in New York.  *See Indian Harbor Ins. Co. v. City of San Diego,* 972 F.Supp.2d 634, 637 (S.D.N.Y. 2013) (insurer was not required to show that it was prejudiced by the delay because N.Y. Ins. Law § 3420(a)(5), which eliminated the "no prejudice" rule did not apply to this case since the policy was issued outside of New York).  Here, there can be no dispute that the Essex Policies were issued outside of New York.  As made clear in the Policies' Declarations, the Policies were issued to GS Holdings at an Illinois address and produced by Oxford Insurance Services Limited, a Houston, Texas-based insurance broker. (*See* Policies, Declarations Pages[3], showing Illinois as state in which they were issued).

Because the New York statutory notice/prejudice rule is not applicable to the Policies, the Endorsement's unambiguous notice requirement[4] applies as plainly written.  That requirement is

---

[3] See Doc 22-3, p. 7 of 75, and Doc 22-5, p. 7 of 29.
[4] GS Holdings has not argued, nor has the Court found, that the pollution coverage endorsement's notice provision is anything other than clear and unambiguous.

8

set forth in the Endorsement's "schedule of notice" which provides:

> Number of days after commencement for the insured to discover the discharge, dispersal, seepage, migration, release or escape of "pollutants": 7;
>
> Number of days for the insured to report the commencement of the discharge, dispersal, seepage, migration, release or escape of "pollutants" to us in writing: 30.

Here, GS Holdings failed to comply with the Endorsement's notice requirement as it did not report either release of pollutants within 30 days of each release. GS Holdings has never disputed the fact that it failed to report the pollution discharges within 30 days as required by the Endorsement's notice provision.

In conclusion, it was error for the Court to rely upon the inapplicable New York statute regarding notice and instead must enforce the timing components of the Pollution Coverage Endorsement. Reconsideration of the Court's Ruling is warranted given this error of law.

**2. The Court's Ruling Denying the MSJ On The Grounds That The Allegations "Clearly Fall Within The Endorsement" Is In Error Because *It Is In Direct Conflict* With The Court's Prior Order Denying the Motion To Dismiss On the Grounds The Endorsement Did Not Apply Because The Release Did Not Arise Out Of The Insured's Work or Operations**

The Court in denying Essex' Motion to Dismiss held:

> [T]he language of the policy is clear and unambiguous – the 7-day/30-day schedule applies to discharges of pollutants which occur as the result of the insured's work or operations. **The policy does not specifically address a discharge that is the result of vandalism of other criminal activity rather than caused by or as a result of the insured's work or operations.** Therefore, the notice provisions relating generally to notice of claims applies, requiring the insured to notify Defendant "as soon as practicable. (Court Order Denying Essex's Motion to Dismiss, pp. 6-7, emphasis added.)

Thus, the Court held that because the discharges of pollutants were ***not* the result of the insured's work or operations** the Endorsement's notice provision did not apply. In its Ruling denying Essex's MSJ, the Court states that it "did not determine that the Endorsement…did not apply" and that "the Court's ruling was merely that the Endorsement did not apply to the issue of

9

notice." (Ruling, p. 4.)

However, the Court's holding that the Endorsement's notice provision did not apply was reached by holding that coverage under the Endorsement was limited to "discharges of pollutants which occur as the result of the insured's work or operations." The Court found that because the discharge was "the result of vandalism of other criminal activity rather than caused by or as a result of the insured's work or operations" the Endorsement's notice provision did apply. (Court Order Denying Essex's Motion to Dismiss, pp. 6-7.)   By holding that the pollution discharges were "the result of vandalism of other criminal activity rather than caused by or as a result of the insured's work or operations" the Court necessarily ruled that there was no coverage under the Endorsement.[5]   In other words, by finding that the pollution discharges did not "result from the insured's work or operations," the Court necessarily found that coverage under the Endorsement was not triggered.

In its Ruling denying Essex's MSJ, however, the Court reached the exact opposite conclusion.  The Court held:

> These allegations clearly fall within the language of the Endorsement in the policy which provides "This insurance applies to 'bodily injury' or 'property damage' arising out of the actual discharge, dispersal, seepage, migration, release or escape of 'pollutants' caused by or resulting from *'your work' or 'your operations…"* Accordingly, Defendant's motion will be denied as it relates to the duty to defend. (MSJ Ruling, p. 8, emphasis added.)

This Ruling, that there is a duty to defend because the alleged property damage arose out of the insured's work or operations, is in direct conflict with the Court's prior ruling in its denial of the Motion to Dismiss that the Endorsement's notice provision did not apply because the pollution discharges did not result from the insured's work or operations.

 Reconsideration of the Ruling is therefore respectfully requested.

---

[5] The law of the case doctrine extends to those issues "decided by necessary implication as well as those decided explicitly." *Dickinson v. Auto Ctr. Mfg. Co.*, 733 F.2d 1092, 1098 (5th Cir. 1983).

V.  **CONCLUSION**

As discussed above, clear error occurred in denying Essex's MSJ. Specifically, the Court applied a New York Insurance statute that does not apply to the Policies. Further, the Court's Ruling denying Essex's MSJ is in direct conflict with its prior ruling denying Essex's Motion to Dismiss. Had the Court been aware that the New York Insurance statute was not applicable to the Essex's Policies and that the 30 day notice requirement was enforceable, and had it followed its earlier ruling denying Essex's Motion to Dismiss, the Court would have considered the parties' briefs and would have ruled that the CGL form's pollution exclusion eliminated coverage for the Claim. Because the Court's Ruling was based on two clear errors of law, the Court should reconsider its Ruling.

> Respectfully submitted,
>
> By: */s/ Mark W. Thayer*
> Mark W. Thayer
> Texas State Bar No. 19826050
> mthayer@gordonrees.com
> 1900 West Loop South, Suite 1000
> Houston, Texas 77027
> (713) 961-3366 – Telephone
> (713) 961-3938 - Facsimile
> ATTORNEYS FOR DEFENDANT
> ESSEX INSURANCE COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 1st day of August, 2016 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5.

> */s/ Mark W. Thayer*
> MARK W. THAYER