IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| 2014 GS HOLDINGS OPERATING, LLC and 2014 GS HOLDINGS, LLC, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 6-15-CV-247 RP |
| ESSEX INSURANCE COMPANY, | § § § | |
| Defendant. | § § | |

**ORDER ON MOTION FOR RECONSIDERATION**

Pending before the court are Defendant Essex Insurance Company's Motion for Reconsideration of Ruling on the Motion for Summary Judgment (Dkt. 28) along with the parties' Agreed Motion for Continuance Pending Outcome of the State Action (Dkt. 37). Defendant asks the court to reconsider its denial of Defendant's motion for summary judgment on the ground that its decision was predicated on two manifest errors of law. Plaintiffs oppose any such reconsideration. For the reasons set out below, the court grants both motions.

**I. THE MOTION FOR RECONSIDERATION**

The court presumes the parties' familiarity with the procedural and factual background of this case and thus provides only a short recapitulation. At the time relevant, Plaintiffs owned and operated oil wells on land leased from Dr. Vernon Bender. Also at the time relevant, Defendant had issued to Plaintiffs a primary policy which included commercial general liability coverage (the "CGL"), subject to a pollution exclusion clause, as well as an endorsement providing coverage for property damage caused by the release of pollutants (the "Endorsement"). Under the CGL, Plaintiffs were obligated to report a covered loss "as soon as practicable," while under the Endorsement, Plaintiffs were obligated to report a covered loss within 30 days of the

1

commencement of the release of pollutants. The CGL and Endorsement are both subject to a New York choice of law clause.

This dispute turns on whether Defendant has a duty to defend or indemnify Plaintiffs under either the CGL or the Endorsement in connection with an underlying lawsuit filed against Plaintiffs in Texas state court by Dr. Bender (the "Bender lawsuit"). The petition in the Bender lawsuit (the "Bender complaint") asserts only that Plaintiffs' oil well operations twice resulted in the release of crude oil and saltwater, contaminating the surface of Dr. Bender's property. Plaintiffs in their federal complaint, however, clarify that it was actually an unknown third party's acts of theft and vandalism in stealing crude oil from Plaintiffs' oil wells that caused the damages alleged in the Bender lawsuit.

Defendant first moved for dismissal, claiming that Plaintiffs had failed to provide notice within thirty days of the release of the pollutants so as to invoke coverage under the Endorsement. In the order denying Defendant's motion to dismiss (the "MTD order"), the court held—taking Plaintiffs' alleged facts as true—that the Endorsement's coverage did not extend to the release of pollutants due in the first instance to third-party acts of vandalism or other criminal activity, that the Endorsement's 30-day notice provision was therefore inapplicable, and that the CGL's "as soon as practicable" notice requirement applied.

Defendant read the MTD order as eliminating the Endorsement as a source of any duty to defend or indemnify Plaintiffs in the Bender lawsuit. Accordingly, Defendant submitted a motion for summary judgment focused entirely on the CGL and its pollution exclusion clause. Plaintiffs responded to these arguments only, similarly eliding any substantial analysis of the Endorsement. However, the court did not address the issues raised by the parties, and instead entered an order denying Defendant's motion for summary judgment (the "MSJ order") on the basis that Defendant has a duty to defend Plaintiffs in the Bender lawsuit pursuant to the Endorsement.

Defendant now argues that reconsideration of the court's denial of summary judgment is warranted because the legal reasoning in the MSJ order is in direct conflict with the legal reasoning in the MTD order. Defendant also contends that the court erroneously relied on New York Insurance Law § 3420(a)(5) in determining that Defendant has a duty to defend Plaintiffs in the Bender lawsuit.

### A. Alleged Conflict Between the MTD Order and the MSJ Order

Defendant alleges that the holding in the MSJ order—that the Endorsement imposes a duty to defend Plaintiffs in the Bender lawsuit—is irreconcilable with the holding in the MTD order that the Endorsement's coverage does not extend to pollution stemming from third-party acts of vandalism or other criminal activity. Defendant believes that the latter ruling, as the "law of the case," should control. *See Agostini v. Felton*, 521 U.S. 203, 236 (1997) ("Under [the law of the case] doctrine, a court should not reopen issues decided in earlier stages of the same litigation."). The court agrees that the holding in the MTD order constitutes the law of the case, but disagrees that there is conflict between the MTD and MSJ orders as to the duty to defend.

### i. The Duty to Defend

Under New York law, an insurer's duty to defend its insured against third-party lawsuits is "'exceedingly broad' and distinct from the duty to indemnify." *Euchner–USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006)). It is "triggered whenever the allegations of [the third party's] complaint, liberally construed, suggest a reasonable possibility of coverage, or the insurer has actual knowledge of facts establishing a reasonable possibility of coverage." *Parler v. N. Sea Ins. Co.*, 129 A.D.3d 926, 927 (N.Y. App. Div. 2015) (citations omitted) (internal quotation marks omitted). In other words, "[i]f any allegations 'fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be,' an insurer must defend." *The Vill. of Piermont v. Am.*

3

*Alternative Ins. Corp.*, 151 F. Supp. 3d 438, 447 (S.D.N.Y. 2015) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984)). "[A]ny ambiguity [in the policy] must be resolved in favor of the insured and against the insurer." *Stein v. N. Assur. Co. of Am.*, 617 F. App'x 28, 30 (2d Cir. 2015) (quoting *Westview Assocs. v. Guar. Nat'l Ins. Co.*, 740 N.E.2d 220, 223 (N.Y. 2000)). "Furthermore, '[t]he duty [to defend] remains even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered.'" *Id.* (quoting *Cook*, 850 N.E.2d at 1155).

The duty to defend "is not, however, without limits"—"[a]n insurer cannot be obliged to defend if there is no legal or factual allegation in the underlying complaint for which the insurer might eventually have to indemnify the insured." *Commercial Union Assur. Co., PLC v. Oak Park Marina, Inc.*, 198 F.3d 55, 59 (2d Cir. 1999) (citations omitted). The duty therefore ends "if and when it is shown unequivocally that the damages alleged would not be covered by the policy." *Sturges Mfg. Co. v. Utica Mut. Ins. Co.*, 332 N.E.2d 319, 323 (N.Y. 1975); *accord Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003) ("[W]hen the uncontroverted facts prove that no duty to indemnify exists the insurer must be relieved of its duty to defend." (quoting *Erdman v. Eagle Ins. Co.*, 239 A.D.2d 847, 849 (N.Y. App. Div. 1997))) (internal quotation marks omitted).

### ii. Application

Defendant's argument that the MTD order and the MSJ order contradict one another relies on the court accepting as uncontroverted fact Plaintiffs' allegation in their complaint that the pollution in question was the result of third-party vandalism or other criminal activity. The alleged fact that third-party vandalism or other criminal activity underlies the damages complained of in the state action is evidence extrinsic to the Bender complaint, *i.e.*, an issue on which the Bender complaint is silent.

"New York law is 'unclear' regarding the circumstances in which a court may consider extrinsic evidence in making coverage determinations" with regard to the duty to defend. *Stein*, 617

F. App'x at 31 n.4 (quoting *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004) (hereinafter "*IBM*"). Certain New York district courts have therefore determined that extrinsic evidence cannot be used to "curtail [an insurer's] duty to defend under the [operative] policy." *See, e.g.*, *Cont'l Cas. Co. v. JBS Const. Mgmt., Inc.*, No. 09 CIV. 6697 , 2010 WL 2834898, at *2–3 (S.D.N.Y. July 1, 2010) (refusing to look to evidence outside the third-party's complaint which would show that the insured-defendant had stopped working at the location in question prior to coverage by the insurer, meaning the insurance policy could not possibly cover the actions alleged). In these courts' view, looking to extrinsic evidence is "inconsistent not only with the Second Circuit's traditional view of New York law . . . . but also with holdings by New York's highest court." *Id.*, at *3; *see Lee v. Aetna Cas. & Sur. Co.,* 178 F.2d 750, 751 (2d Cir. 1949) (Learned Hand, C.J.) ("[I]t is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from any one else, which indicates, or even demonstrates, that the injury is not in fact 'covered.'"); *Zurich–Am. Ins. Cos. v. Atlantic Mut. Ins. Cos.*, 539 N.E.2d 1098, 1098 (N.Y. 1989) ("We agree [that] because [the insurer's] policies extended coverage to employees of the church, the allegations in the complaints that injuries were caused by the putative individual insureds while acting in the church's employ triggered [the insurer's] obligation to defend . . . the answers of those individuals, denying that they were church employees, merely posed factual and legal issues to be resolved in the underlying actions."). This approach characterizes the use of extrinsic evidence as "subvert[ing] the insured's bargained-for right to a defense against any underlying action implicating coverage under the policy." *Id.*

Other courts are not as strict, but are nonetheless quick to note limits on the practice. For example, while acknowledging that "[a] narrow, but widely recognized exception to the [rules governing the duty to defend] allows an insurer to refuse or withdraw a defense if evidence extrinsic to [the complaint and the operative insurance policy] . . . [when it] plainly take[s] the case outside the

5

policy coverage," the Second Circuit made it clear that such extrinsic evidence must be "unrelated to the merits of [the third-party] plaintiff's action." *IBM*, 363 F.3d at 148 (quoting Allan D. Windt, *Insurance Claims and Disputes*, § 4.4 at pp. 293–94 (West 2001) (citing cases) (internal quotation marks omitted). Thus, in the "exceptional circumstances" in which there is "no genuine dispute as to an extrinsic fact which when applied to the underlying allegations limits them to a claim not covered by the policy" *and* "where the factual issue central to the insurance coverage dispute is collateral to the underlying action, so that it is irrelevant to the underlying action and will not be addressed there, the court which has jurisdiction over the declaratory coverage action may make the determination." *Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1424–25 (S.D.N.Y. 1991) (citations omitted). Further, such extrinsic evidence must "allow a court to '*eliminate the possibility* that the insured's conduct falls within coverage of the policy'" in order to relieve the insurer of its duty to defend. *IBM*, 363 F.3d at 148 (citing *Haskel, Inc., v. Superior Ct.*, 33 Cal. Rptr. 2d 520, 523 (Cal. Ct. App. 1995); *Avondale*, 774 F. Supp. at 1424).

That is not the case here. Plaintiffs submitted a "Motion for Leave to Designate Responsible Third Party" in the Bender lawsuit, (Dkt. 25-4), which has been granted by the state court, (Dkt. 25-5). In that motion, Plaintiffs allege that they "are not liable to [Bender] because [Bender's] damages, if any, were the result of the negligent and/or criminal acts of unknown third person/s which were an intervening/superseding, direct and/or proximate cause which relieves [Plaintiffs] of liability." (Dkt. 25-4). Whether the pollution in question was caused by third-party vandalism or other criminal activity is therefore not irrelevant or collateral to the merits of the underlying Bender lawsuit. As a result, this court cannot hold that Defendant has no duty to defend until a judicial determination in the state action settles the factual issues underlying the cause or causes of the alleged damages. *See Avondale*, 774 F. Supp. at 1425 (citing to *Colon v. Aetna Life and Cas. Ins. Co.*, 484 N.E.2d 1040, 1042

(N.Y. 1985) for the proposition that the "duty to defend continues until judicial determination, either in underlying action or in coverage action, of issue relevant to coverage").

It was therefore not irreconcilable error for the court to find, at the motion to dismiss stage and taking Plaintiffs' alleged facts as true, that the Endorsement does not cover pollution resulting from third-party vandalism but to then find, at the summary judgment stage, that the allegations in the underlying Bender lawsuit implicate Defendant's duty to defend. *See Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 261 (S.D.N.Y. 2013) ("Because the duty to defend is often decided on the basis of the four corners of the underlying complaint and the terms of the insurance policy, it can frequently be resolved without factual investigation." (citing *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693–4 (7th Cir. 1995))).

## B. Alleged Misapplication of New York No-Prejudice Law

The MSJ order stated that "New York [Insurance Law § 3420(a)(5)] prohibits insurers from denying claims on the ground of late notice in the absence of prejudice," that Defendant had provided no evidence of such prejudice, and that Defendant thus has a duty to defend Plaintiffs in the Bender lawsuit irrespective of Plaintiffs' allegedly late notice. (Dkt. 27 at 4).

Defendant argues that this was error because New York Insurance Law § 3420(a)(5) applies only to policies issued or delivered in New York. *See* N.Y. Ins. Law § 3420(a) (stating that § 3420 applies only to policies and contracts "issued or delivered" in New York). Defendant asserts that "there can be no dispute" that the insurance policies in question here were issued outside of New York, because "[a]s made clear in the Policies' Declarations, the Policies were issued to GS Holdings at an Illinois address and produced by Oxford Insurance Services Limited, a Houston, Texas-based insurance broker." (Dkt. 28 at 8) (citing Dkt. 22-3 at 7; Dkt. 22-5 at 7). Accordingly, Defendant contends that New York Insurance Law § 3420(a)(5) is inapplicable to the policies at issue, that New

York's common law fills the gap, and that "the Endorsement's unambiguous notice requirement applies as plainly written." (Dkt. 28 at 8); (Dkt. 33 at 4).

Plaintiffs have not contested Defendant's factual allegations regarding the meaning of the information contained in the "Policies' Declarations." Instead, Plaintiffs appear to argue that Defendant has asked the court to apply Illinois law and that the choice of law provision in the insurance policies at issue requires the application of New York law. (Dkt. 32 at 6–7).

Plaintiffs misconstrue Defendant's argument. When New York Insurance Law § 3420(a)(5) is not implicated because the policy in question was not issued or delivered in New York, the law that then applies is merely New York common law, not the law of the place of issuance. *See Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 648 (S.D.N.Y. 2013) (explaining that "[i]n 2008 the New York Legislature amended its Insurance Law to change the state's common-law no-prejudice rule with respect to liability insurance policies issued or delivered in New York"). Under New York common law, the insurer need not show prejudice in order to disclaim coverage based on an insured's untimely notice. *Id.*; *accord Sec. Mut. Ins. Co. of N.Y. v. Acker-Fitzsimons Corp.*, 293 N.E.2d 76, 78 (N.Y. 1972) ("[An insured's] failure to satisfy the notice requirement vitiates the policy, and the insurer need not show prejudice before it can assert the defense of noncompliance." (internal citations omitted)); *see Gelfman v. Capitol Indem. Corp.*, 39 F. Supp. 3d 255, 268 (E.D.N.Y. 2014) ("'[C]ompliance with notice provisions of an insurance contract is a condition precedent to all of the insurer's duties and liability under the policy,' 'including the duty to defend.'" (quoting *Commercial Union Ins. Co. v. Int'l Flavors & Fragrances, Inc.*, 822 F.2d 267, 273 (2d Cir. 1987))).

Defendant correctly points out that Plaintiffs have "never disputed the fact that [they] failed to report the pollution discharges within 30 days as required by the Endorsement's notice

provision." (Dkt. 28).[1] However, it is only "[a]bsent a valid excuse" that "a failure to satisfy the notice requirement vitiates the policy." *Sec. Mut. Ins. Co.*, 293 N.E.2d at 78 (citation omitted). "There may be circumstances, such as lack of knowledge that an accident has occurred, that will explain or excuse delay in giving notice and show it to be reasonable." *Id.* (citation omitted). "[T]he insured has the burden of proof thereon," and in any event "must exercise reasonable care and diligence to keep himself informed of accidents out of which claims for damages may arise." *Id.* at 79. Generally, questions of the insured's reasonableness in delaying notification to the insurer is an issue of fact for the factfinder, although "where there is no excuse or mitigating factor, the issue poses a legal question for the court." *United Nat. Ins. Co. v. 515 Ocean LP*, No. 08-CV-2630 CBA JMA, 2011 WL 9153460, at *5 (E.D.N.Y. Feb. 22, 2011) (collecting cases).

Plaintiffs maintained at the motion to dismiss stage that "[b]y their report dated May 9, 2015, [P]laintiffs reported the[] two incidents [underlying this suit] to [Defendant] as anyone would if their knowledge was after the fact," (Dkt. 10 at 3), and they reiterated this characterization of events in their opposition to Defendant's motion for summary judgment, *see* (Dkt. 25 at 5). Despite this, however, neither party in their summary judgment briefings addressed Plaintiffs' supposed lack of knowledge or how it might impact the notice requirement under the Endorsement. This was presumably because both parties read the MTD order as foreclosing the possibility that Defendant could have any duty to defend or indemnify pursuant to that coverage. Given this posture, and for the reasons set forth below, the court believes that it would be unfair to ignore Plaintiffs' statements regarding their lack of knowledge of the incidents at issue here.

In making its inquiry into whether the movant is entitled to judgment as a matter of law under the summary-judgment standard, a court "is not confined to the particular propositions of law advanced by the parties on the summary-judgment motion." 10A C. Wright, A. Miller, & M. Kane,

---

[1] Whether Plaintiffs provided late notice is "extrinsic evidence," but of the kind that is irrelevant to the allegations in the underlying Bender lawsuit and therefore potentially amenable to scrutiny in this coverage action.

9

Federal Practice and Procedure § 2725.3 (4th ed., Supp. 2016). "Nevertheless, a court should be cautious in this situation inasmuch as there is a greater possibility of error when the opposing party, who may be able to demonstrate that a genuine dispute exists, has not done so because the facts relating to the particular legal principles urged by the movant were not in issue." *Id.*, *cited in Fed. Deposit Ins. Corp. v. Grupo Girod Corp.*, 869 F.2d 15, 17 (1st Cir. 1989); *Ware v. Trailer Mart, Inc.*, 623 F.2d 1150, 1154 (6th Cir. 1980). "Therefore, the court normally should give the parties notice when it intends to rely on a legal doctrine or precedents other than those briefed and argued by the litigants." *Id.*

Here, Defendant did not address the coverage of the Endorsement in its motion for summary judgment beyond stating that "[b]ecause the Court ruled that the Claim does not fall within the Endorsement's insuring agreement, in order for there to be coverage for the Claim under the Primary Policy (and hence under the follow form Excess Policy), the Claim must fall within the only other type of coverage under the Policies—CGL Coverage under form CG 00 01 12 07." (Dkt. 22 at 13). In other words, Defendant spent the majority of its motion for summary judgment addressing whether it had a duty to defend or indemnify under the CGL, including an assessment of the legal scope of the CGL's pollution exclusion and whether crude oil and salt water are "pollutants" as a matter of law. Plaintiffs in turn used their response in opposition to attempt to refute those arguments. The reasoning advanced by Defendant therefore had nothing to do with the Endorsement or whether notice was timely, and so Plaintiffs were not alerted that they might need to clearly dispute factual issues relevant to determining Defendant's potential duties under the Endorsement. The failure to do so would have been immaterial had the court not then based its denial of summary judgment on an assessment of the scope of the duty to defend under the coverage provided in the Endorsement. Further, in the process of doing so, the court did not give

the parties notice that it intended to rely on a legal analysis that neither party had briefed. This situation is thus ripe for potential error.

The above, in conjunction with the cursory nature of the MTD order, leads the court to believe it would be unfair to construe Plaintiffs' response opposing Defendant's motion for reconsideration as though it were no different than a response in opposition to a motion for summary judgment. Plaintiffs likely did not view said briefing as an opportunity to dispute facts or address the issues the court raises today, but instead sought only to convince the court not to reconsider the purportedly erroneous MSJ order. Accordingly, and so that the parties may conduct any further discovery deemed necessary as well as file summary judgment motions addressing both the arguments made in the original filings and any new arguments implicated by this order, the court grants Defendant's motion to reconsider, vacates the order denying Defendant's motion for summary judgment, and dismisses Defendant's motion for summary judgment.

## II. THE AGREED MOTION FOR CONTINUANCE

The parties filed their Agreed Motion for Continuance Pending Outcome of the State Action (Dkt. 37) on September 28, 2016. In it, they explain that Defendant has offered to defend Plaintiffs in the Bender lawsuit subject to a reservation of rights and that a special setting for February 13, 2017, has been set in that state action. (Dkt. 37 at 4). They ask that, "subject to the Court's consideration and ruling on the Motion for Reconsideration," the court enter an order continuing the trial in the instant action until sixty days after resolution of the Bender lawsuit in order "to allow the underlying facts to be determined prior to consideration of [Defendant's] duty to indemnify [Plaintiffs] for any damages awarded in the State Action." (Dkt. 37 at 5). Given that the court has already determined that the order denying summary judgment should be vacated, the court grants the agreed motion to the extent that the current pre-trial conference and trial dates be correspondingly vacated. It is further ordered that the parties shall immediately notify the court

upon conclusion of the state court action as well as file any summary judgment motions within sixty days of that occurrence.

### III. CONCLUSION

Defendant's Motion for Reconsideration of Ruling on the Motion for Summary Judgment (Dkt. 28) is **GRANTED**. The order denying summary judgment (Dkt. 27) is **VACATED**. Defendant's Motion for Summary Judgment (Dkt. 22) is **DISMISSED** without prejudice to refiling. The parties' Agreed Motion for Continuance Pending Outcome of the State Action (Dkt. 37) is **GRANTED** to the extent that the court vacates the final pre-trial conference and trial dates. New dates will be set by the court at an appropriate time in the future. Lastly, it is **ORDERED** that the parties immediately notify the court upon conclusion of the state court action, and that the parties may file summary judgment motions within **sixty days** of that occurrence.

**SIGNED** on October 4, 2016.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE